UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRIAN WHITTON,

        Petitioner,

   v.                                    Case No. 21-C-844

UNITED STATES OF AMERICA,

        Respondent.

**ORDER DENYING MOTION FOR RELIEF UNDER 28 U.S.C. § 2255**

On February 27, 2020, after a four-day jury trial, Brian Whitton was found guilty of arson of a commercial building, in violation of 18 U.S.C. § 844(i); two counts of mail fraud, in violation of 18 U.S.C. § 1341; use of fire to commit mail fraud, in violation of 18 U.S.C. § 844(h); and making a false statement, in violation of 18 U.S.C. § 1001. On July 6, 2020, Whitton was sentenced to 180 months imprisonment to be followed by 3 years of supervised release. Whitton filed a notice of appeal but later moved to dismiss his appeal pursuant to Fed. R. App. P. 42(b). Now before the Court is Whitton's motion to vacate, set aside, or his correct sentence pursuant to 28 U.S.C. § 2255. Whitton alleges he was denied effective assistance of counsel because his attorney coerced him into waiving his right to testify on his own behalf and refused to call certain witnesses on his behalf, namely, his spouse and an attorney who had given him advice on his business. Dkt. No. 1 at 2–3. For the following reasons, Whitton's motion will be denied.

## BACKGROUND

On November 27, 2019, Brian Whitton was indicted for the five counts referenced above arising from the March 25, 2017, fire at his business, The Stage Off Main tavern, located in

Waukesha, Wisconsin, and his recovery on the insurance claim he submitted for the resulting damage and losses. *United States v. Whitton*, Case No. 19-CR-224, Dkt. No. 1. The fire started shortly after closing when empty cardboard boxes stacked against a wall-mounted electric space heater in the basement of the bar ignited. Fortunately, the damage was limited when a water pipe above the heater burst even before firefighters arrived and doused most of the flames. As a result, evidence of the cause of the fire, including the charred boxes that were ignited by the electric heater, were preserved. Even more importantly, the video recordings from the surveillance cameras Whitton had installed in the bar were intact.

    The evidence offered at trial showed that Whitton's plan to operate the bar in downtown Waukesha was failing. The Government introduced evidence that in the month preceding the fire Whitton was receiving overdraft notices from his bank because he was writing non-sufficient funds checks on the bar's checking account, that he was on a payment plan with the electric company for past due charges and couldn't keep up, and that he had come to hate the trap he found himself in having to work more than 100 hours a week with nothing to show for it. The Government also introduced a series of text messages to friends and family during the month preceding the fire decrying the fact that Whitton had no money to advertise, that almost all the income went to pay a band, that cash was running "scarcely low now," that he was having difficulty paying his bartender, and that he was reducing hours of operation. On March 4, 2017, Whitton received a text from a friend who found the business closed when she stopped by Saturday night with friends. The friend's text read: "Hey, you're not making any money being closed on a Saturday night, buddy." Whitton's response read: "Well, I'm not making any money burning lights for 3 1/2 hours with no customers either, babe."

2

The true strength of the Government's case, however, was the surveillance video that showed Whitton's activities in the bar on the night before and the early morning hours of the day of the fire, along with the series of inconsistent statements he made about his activities. The Government was able to show the jury that empty cardboard boxes were tossed down the basement stairs throughout the night and that Whitton had gone down those same stairs and remained in the basement for a prolonged period of time, supposedly to turn the lights off, just before closing. The fact that, after the fire was extinguished, the charred remains of those same boxes were found not at the bottom of the stairs or in the area where empty boxes were normally stored but directly under the wall-mounted electric heater provided strong circumstantial evidence that Whitton had stacked the boxes against the heater in order to start the fire. That smoke could be seen rising from the basement into the first-floor bar area only eleven seconds after Whitton left the building significantly strengthened that conclusion.

The Government was also able to point to inconsistencies in Whitton's account of the events leading up to and following the fire. Whitton had given several statements to investigators about his conduct at the time of the fire, including a 90-minute recorded interview he gave to an investigator several days later. For example, contrary to his post-fire statement to an investigator, the video also showed Whitton removing all of the cash from the register just before leaving. He initially told investigators that no boxes were stacked near the heater but later explained that he might have bumped into them when he went down to turn off the lights. Other surveillance video taken from a nearby convenience store cast serious doubt on Whitton's claim that he was home making a sandwich when he received the phone call telling him his business was on fire. Finally, the Government was able to demonstrate its theory of the case by showing the jury a series of tests

that demonstrated the manner in which the boxes needed to be placed around the heater in order for them to ignite.

After the Government rested, Whitton's trial attorney, Daniel M. Adams, advised the Court that his client had decided not to testify. The Court then instructed Whitton as follows:

> Mr. Whitton, of course, you understand you have the right to testify. That's a constitutional right, and you can take the oath and tell the jury whatever you want, you know, in response to questions, and then the government would get to cross-examine you. That's your constitutional right. It's also your right not to testify. And if you choose not the testify, you've already heard me tell the jury that they can't hold that against you or treat it as evidence in any way. And I'll give an instruction of that sort at the end of the trial if that's your choice. But it's really your choice. And you certainly should consult with your attorney and I assume that's what you've done. But at this point you should decide or let us know whether you wish to testify or whether you wish to waive that right to testify.

Case No. 19-CR-224, Dkt. No. 45 at 66:16–67:05. Whitton responded: "I wish to waive it." *Id.* at 67:06. The Court then asked counsel whether there would be any witness for the defense, and counsel responded, "No, we will rest." *Id.* at 67:07–09. The Court then commented, "I take it this has something to do with the 90-minute interview we heard, and you've heard – we certainly have heard a lengthy statement by Mr. Whitton." Counsel responded, "Yes, Your Honor." *Id.* at 67:14–17.

The jury deliberated less than two-and-a-half hours before returning a verdict of guilty on each count. After denying Whitton's motion for a new trial under Fed. R. Crim. P. 29, the Court imposed concurrent terms on each count totaling 15 years. Although Whitton filed a notice of appeal, his appeal was later dismissed on his own motion.

In his § 2255 motion to vacate his conviction, Whitton claims that his trial counsel, Attorney Daniel M. Adams, provided ineffective assistance of counsel in two ways: 1) he refused to allow Whitton to testify, and 2) he failed to call Whitton's wife Natalie and his business attorney Glen Kulkoski to testify in his defense. According to his own affidavit and that of his wife,

4

Whitton told Attorney Adams multiple times during his trial that he wished to testify, but Attorney Adams refused his requests, at one point threatening to commit "Hari Kari" if Whitton insisted on testifying. Whitton claims he only waived his right to testify because he thought he would be abandoned by his attorney if he did not do so.

If they had testified, Whitton and his wife state they would have told the jury about her $8,000 per month salary as a registered nurse in Tennessee, as well as $20,000 she had in savings to rebut the Government's evidence of a financial motive. Whitton stated he would also have testified that before the fire he had retained Attorney Kulkoski to represent him regarding a dispute over the land contract he had signed to purchase his business. According to the affidavit of Attorney Kulkoski, he had reviewed the land contract and advised Whitton that a drafter's error provided a defense to the full amount claimed under the agreement which likely could have resulted in a compromise with the owner. Whitton claims that Attorney Adams' refusal to allow him to testify and his failure to call Natalie and Attorney Kulkoski as witnesses constitute ineffective assistance of counsel in violation of his Sixth Amendment rights and entitle him to a new trial.

## ANALYSIS

To prevail on a claim of ineffectiveness of counsel, a defendant must establish both that his attorney's performance fell below an objective standard of reasonableness and that this deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 694–95 (1984). "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986).

5

Case 1:21-cv-00844-WCG   Filed 04/12/22   Page 5 of 9   Document 9

In assessing a claim of ineffective assistance of counsel, the court's review of a trial attorney's performance is "highly deferential":

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Strickland*, 466 U.S. at 689 (internal quotations and citations omitted).

As to the prejudice prong, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Although Whitton has asked for a hearing on his motion, a judge may deny the motion without a hearing when it is clear from the motion and the prior proceedings in the case that the defendant is not entitled to relief. *Aleman v. United States*, 878 F.2d 1009, 1012 (7th Cir. 1989). This is such a case.

With respect to Whitton's claim that his attorney refused to allow him to testify on his own behalf, the record reflects unequivocally that Whitton waived his right to testify. The Court explained to Whitton his right to testify outside the presence of the jury, including that it was his right and not that of his attorney. The Court further explained that if he chose not to exercise that

right, the Court would again advise the jury that his exercise of the right not to testify could not be used against him or treated as evidence in any way. Noting that he should consult with counsel but that it was really his choice, the Court asked Whitton whether he wished to testify. Whitton responded without hesitation, "I wish to waive it." Case No. 19-CR-224, Dkt. No. 45 at 67:06.

This record refutes Whitton's claim that his attorney did not allow him to testify. The Court explained to Whitton that it was his choice to testify, not his attorney's. While his attorney may well have strongly advised him not to testify, and even used a hyperbolic statement to emphasize his advice, Whitton's answer to the Court's question—"I wish to waive it"—indicates unequivocally that he waived his right to counsel. Whitton's claim that he feared his attorney would, or could, abandon him in the middle of trial if he did not follow his advice is simply not a plausible one. Whitton does not suffer from mental illness or developmental disability. He is a mature married man, has a child, and was operating a business in connection with which he retained attorneys for advice. He expressed no confusion in his response to the Court and appeared confident throughout the trial that he would be acquitted.

Moreover, the record clearly reflects why Attorney Adams gave such advice and why Whitton readily accepted it. As the Court suggested in its comment after Whitton conveyed his intent to waive his right to testify, Whitton's side of the story had already been conveyed to the jury in the form of the 90-minute audio recorded interview he had with ATF Special Agent Hankins days after the fire. No good could have come from Whitton being subjected to cross-examination in detail about his text messaging over the dire financial condition of his business, his actions in the moments preceding the fire as depicted in the video recordings the jury had been shown, and the inconsistent statements he had made to the fire chief and law enforcement concerning the location of boxes and his movements before and after the fire.

7

The same is true of the decision not to call any witnesses. Neither had any knowledge concerning the actual events surrounding the fire. Calling Natalie Whitton, who apparently lived and worked in Tennessee, to testify about her income and finances would not have detracted from the evidence the Government had presented that Whitton's business was failing. It would have instead provided another opportunity for the Government to remind the jury of Whitton's frustration and unhappiness with his business as the prosecutor cross examined Ms. Whitton about her own knowledge of the overdrafts on her husband's business checking account, his difficulties paying employees, the reduced hours of operation at the bar, the delay in paying utility bills, and the other evidence of financial difficulty that had been presented. Likewise, as to Attorney Kulkoski's proposed testimony, it went only as to motive and would have provided the Government yet another opportunity to emphasize to the jury the dire financial condition of Whitton's business.

As the Government notes, "to the extent that Whitton, his wife, and civil attorney could have offered testimony to rebut evidence of Whitton's financial motive to commit arson, the substance of their testimony was already before the jury." Dkt. No. 6 at 7. His attorney argued at length during his closing argument on the basis of Whitton's statements during his recorded interview with Agent Hankins that Whitton had no such motive, financial or otherwise, to set fire to his own building. Under these circumstances the decision not to call Natalie Whitton and Attorney Kulkoski as witnesses would appear strategic, and sound strategy at that. "A lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review." *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997). The fact that Whitton seemed perfectly fine with the decision when his attorney advised the Court in his presence that the defense would call no witnesses suggests he agreed.

Finally, even if the Court was to assume Attorney Adams' advice to Whitton that he not testify and his failure to call Natalie Whitton and Attorney Kulkoski as witnesses constituted deficient performance, Whitton would be unable to show any prejudice. The evidence in this case, though largely circumstantial, was exceptionally strong. Whatever testimony these witnesses could have offered on motive could not have overcome the contemporaneous evidence of text messages Whitton himself sent in response to friends' inquiries, and the financial records spoke for themselves. More importantly, it had no bearing on the key element of the Government's case, namely the cause of the fire. The video evidence in the case showing Whitton's last moments in the bar, removing the cash from the register, going down to the basement one last time before leaving and then smoke rising from the floor within seconds of his leaving, combined with the evidence showing how the boxes needed to be placed in order for the electric space heater to ignite the cardboard, left little for the jury to infer. The jury drew the only logical conclusion the evidence permitted—Whitton intentionally tried to destroy his business by setting it afire. In light of this evidence, Whitton cannot establish any likelihood that the outcome of his trial would have been different had he, his wife, and/or his business attorney testified as proffered. None of that proposed testimony undermines confidence in the outcome of the trial.

Accordingly, and for the reasons set forth above, the Court concludes from the petition, supporting affidavits, and the entire record in Case No. 19-CR-224, that Whitton is not entitled to relief. His motion to vacate his convictions pursuant to 28 U.S.C. § 2255 is therefore denied and this case dismissed.

**SO ORDERED** at Green Bay, Wisconsin this 12th day of April, 2022.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge